Welcome to the third day of our sitting this week in Atlanta. We have three cases this morning and Judge Newsom and Legault and I are looking forward to speaking with you and learning more about your cases. We have our, remember that we have our timing system, it's like a traffic light system. When light's green, continue your argument. When it's yellow, that means you have two minutes left in your allotted time. And when it turns red, please conclude your remarks unless you're answering a question from the court. Okay, our first case of the day is 23-12822, John Doe, et al. v. United States of America. Mr. Hamilton, you've reserved three minutes for rebuttal, is that correct? All right, you may proceed, sir. Thank you, Your Honor. You may please record. Mr. Hamilton and I, along with Ashley Cameron, represent the parents of three minor children who suffer physical and emotional abuse while under the care and supervision of the United States government. They attend the daycare center at Robbins Airport Space in Houston County, Georgia. Today, we're asking the court to do two things. First, reverse and remand the district court's decision that all of the minor's claims arise out of the intentional tort exception to the Federal Tort Claims Act. Second, although we believe our original complaint is sufficient in this matter, we're also asking the court to conclude that the district court abuses discretion when it comes to allow the minors to amend their complaint to include additional claims and clarify further claims in the original complaint. Now, the district court analyzed two cases primarily in reaching their decision. The Sheridan v. United States case decided by the Supreme Court in 1988 and the Eleventh Circuit's Alvarez v. United States decided in 2017. Sheridan first acknowledges the, it acknowledges the fact that there can be two causes to an injury, two tortious causes to an injury. One being an independent or one being an intentional cause of an injury and one being a negligent cause to an injury. And is the idea, just so I can get my, kind of my head around it here, there are sort of two sets of actors here. One set we'll call them the alleged perpetrators, the people on the ground who in fact caused the abuse. And the second would be those who failed to supervise or protect or whatever the victims from the perpetrators. Is that right? And what you're saying is I'm focused on the latter, not the former. Yes, Your Honor. We're focused on the separate negligent act that is independent of the intentional tort itself. And there were two theories here that were discussed. Can I ask you one other quick question just again to get, make sure I've got the, kind of the decision tree right? So first I guess we've got to figure out whether or not the intentional tort exception applies in the first place. And then I guess there's this question whether Sheridan and Alvarez together provide some escape from the intentional tort exception. Is that right? So the intentional tort exception on its face, I guess, and as interpreted says, sort of is the underlying tort essential to or collateral, instead collateral to the tort that you're pursuing, the failure to protect tort. Is that right, basically? Well, if I understand your question correct, Your Honor, you're trying to determine whether there's a complete end of, it doesn't arise out of the employment status of the intentional tort. The term intentional tort exception uses the phrase arise out of. And like what does that mean? And it seems like the courts have said it means is the underlying intentional tort, you know, essential to or instead collateral to the negligence-based tort, let's say. Yes, Your Honor. I think that looking at the two theories that Sheridan discussed, it gave us a way to analyze whether a claim arises out of the intentional tort exception. The first theory that they provide is that there's an independent basis of tort liability, independent from the intentional tort, that arises prior and there's antecedent negligence, a breach of that independent duty that arises prior to the actual intentional tort occurring. And that's the one that the Sheridan court says, we're not dealing with that one, right? They said that they didn't need to rely on it in that case because the facts didn't really, didn't really tailor it to that theory. Instead, it focused, they focused more on the second theory where the intentional, they said that the intentional tort exception must be read against the Federal Tort Claims Act, meaning that the intentional tort exception can only apply to claims that are otherwise waived out of the Federal Tort Claims Act. Here in Sheridan, the assailant that committed the intentional tort was an off-duty employee that was not acting in the scope and course of his employment at the time that he committed the intentional tort. So when the Federal Tort Claims Act says, generally, we waive sovereign immunity for the negative or wrongful acts of our employees acting within the scope and course of their employment, that's what is waived. The exception can only apply to what is waived. And since the actor was not acting within the scope and course of his employment at the time, he had committed, he was outside of it, he wasn't even on the job, they said that... Let me ask you a question related to what Judge Newsom asked you. Sheridan says that it wouldn't make sense to exonerate the government, quote, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the government. Can we say in this case that the perpetrator's employment status had nothing to do with the basis for liability because some of the things you allege in your complaint, for example, the government points out are things like failure to vet or investigate the employees, which clearly seem to be supervisory-type activities. Well, yes, Your Honor. There are two points that I'd like to make to that question. First, although there are some claims in our complaint of negligent... Supervision. Supervision, there are other claims that do not arise out of negligent supervision. There are other claims of an independent duty. We alleged one out of Georgia state law that when one assumes the duty to care for and supervise a child... That's really your best argument, isn't it? That that's really what the underlying basis for, I guess, the off-ramp would be, is this Georgia statute that provides a duty. Yes, ma'am. And we need a cause of action under Georgia law for the Federal Tort Claims Act to apply. And there is a Georgia common law standard that a child care provider has a duty to exercise reasonable care for the safety of the child, gauged by the standard of the average reasonable care. And there are other cases where... All in my authority and to this court that are persuasive to this court, and we reference it in our brief, the Doe v. United States case, which has facts much more analogous to ours here, where we had children at a daycare center at an Air Force base who were molested by unknown assailants. And the court in the Seventh Circuit said that there was an independent basis of tort liability here for the person who supervised the children. The duty itself was between the special relationship of the children and the United States, not between the unknown actor, whether it be an employee or not. What do you allege? Do you allege that in the complaint, that some of the acts that were perpetrated on the children, do they fall under assault or are they child abuse claims? Well, they did child abuse. I used it hand-in-hand with the assault and battery here. There were allegations of the daycare workers hitting the children, causing the children to hit each other, spraying the children in the face with cleaning solutions like Windex, things of that nature. And those are intentional torts of assault and battery. But I'd like to also point the court to another case that we cited in our brief, the Bowdoin v. Vaccinian case, which is a Fifth Circuit case. And although they analyzed this for a different reason, they discussed whether the doctor, and for a factual background, that case dealt with a psychiatrist who was sexually assaulting his patients while in the office and had appointments with these patients. And the court in the Fifth Circuit relied on the first theory of the independent duty on the co-workers to prevent this assault from happening. But they also had a section where they discussed, did his actions arise out of the scope and course of his employment? And the court ultimately said that whenever he committed these intentional acts of groping these patients, that he stepped outside of his authority that the government gave him and he was not in furtherance of his job duties. So I think that we can use that same premise here because Georgia law is very similar in Texas law whenever we're talking about whether someone is acting within the scope of their employment or not. I think this helps us recover or proceed on both theories. This is the second theory here that I'm kind of referencing. In Georgia, whether or not a person is acting within the scope of the course of their employment, was their action serving the master at the time of the injury? If their actions are not by the reason of their employment or not furtherance of their employment, then they have stepped outside the scope of their employment status and out of their job duties. Looking at the case here that we have before the court, an intentional tort of daycare workers who were tasked with supervising and caring for, promoting the well-being of these children, keeping them safe from harm, not actually harming them. I don't think the facts support here that these daycare workers who committed the intentional tort actually were acting within the scope of the course of their employment. Is that the kind of thing that we can decide ourselves? Or did the district court make any findings about scope of authority? Is that the kind of thing that we would need to remand from the district court to determine in the first instance? Well, I do think that in other cases that we have cited, there was a more developed record that the court was able to rely on, both the circuit courts and the district courts, whenever they made their decisions. Here, we were cut off at the very beginning and also very limited because there was a criminal prosecution going on simultaneously that ended after this was actually decided. I see that your time is running short, but I have another question. You mentioned the Georgia negligence theory, and you're right, you have to have that to allege to have a claim. But what role does the other duty that the United States took on where you say they have a duty to protect the children that's independent of Georgia state law? Well, I think it also goes into Georgia state law, but they assumed that duty when they opened the daycare center. But what role does that play in our analysis? What role does them assume? Does the rule, or I can't remember whether it was a rule or regulation. Well, ultimately, it goes to just show that it was a duty that they assumed, and we can also look towards that. It just falls up underneath the state law claim. So, if the daycare administrator, the daycare higher-ups, have an independent duty both under these rules and also under Georgia law, then what does it matter whether the alleged perpetrators were acting within the scope of their employment? Well, it's two different theories. It allows us to proceed under the first theory that we have alleged an independent basis of tort liability that does not arise out of the intentional tort and is not related to the intentional tort. Ultimately, although the 11th Circuit has not adopted that theory in Alvarez, they really didn't have to adopt that theory in Alvarez. Ultimately, and if we look to the concurring opinion, Judge Rosenbaum was very articulate in that no matter what, every claim that was brought before the court in Alvarez sounded out of misrepresentation. It was due to communication or non-communication. And in that case, misrepresentation ended up having a negligent counterpart. Here, with intentional tort and solitary, there is no negligent counterpart. This is an opportunity for the 11th Circuit to analyze this first theory and adopt it because this is a case that would actually call for it and other circuits have actually followed the first theory with similar facts to these. Also, the second theory, if we look at the arising out of the employment status, we contend that they were not acting within the scope, but that would also be a factual finding that we could figure out in the district court. Thank you, Mr. Hamilton. Go ahead, Judge Rosenbaum. So you agree then with that we would have to have the district court make that finding in the first instance if they were acting within the scope? Well, I think it's certainly a fact question. Okay. Yes, Your Honor. Thank you. You'll have your full three minutes for rebuttal, Mr. Hamilton. Mr. Ross. Good morning, Your Honor. May it please the court. Aaron Ross for the United States. I just want to immediately jump to that scope issue. The scope issue was never argued to the district court and it wasn't argued on appeal. Federal plaintiffs have never cited any law at district court or appeal regarding Georgia's scope issue. But I think to Judge Lagoa's point, it doesn't matter because the issue is whether the other data records were in scope, which is not dispute here. And no one's really seriously argued before that the teachers weren't in scope either because they were functioning in their role as teachers. This wasn't a sexual assault case like some of the other cases we've seen, like the Fifth Circuit voting case that the opposing counsel referenced. The FDJ's intentional tort exception bars claims arising out of assault or misrepresentation by federal employees, including claims for negligent supervision and retention. In this case, plaintiffs have conceded that their complaint here is fundamentally one of negligent supervision and retention and employment relationship. Although they do point to Georgia Commonwealth duty on childcare providers, they don't allege that the United States breached that duty in any way other than in its negligent supervision and retention of the federal daycare teachers here. As a result, the United States request of this court affirmed the district court's order in dismissing the plaintiff's complaint and denying their motion for a leap to amend. In Sheridan, the Supreme Court clarified that the intentional tort exception has to be read against the rest of the NTCA. From there, the court held that the intentional tort exception does not apply to claims arising out of assault and battery by a federal employee where the government's alleged negligence, the basis of liability, is entirely independent of and having nothing to do with the intentional tort user's employment status. Well, that's what Sheridan said with respect to Theory 1, right? What I've called Theory 1. Like they said, there are two theories, and Theory 1 is they're like the entirely independent of. But Theory 2, I thought, was likewise doesn't apply if the underlying tort were committed by either a non-government employee or a government employee acting outside the scope of his or her employment. That's not exactly correct. So what Sheridan was talking about is looking at Munee's case, which didn't deal with an assault by a government employee. It dealt with an inmate on inmate assault. And so what Sheridan was saying, how did we get to the point in Munee's where we said the intentional tort exception does not apply? And so the first theory said, well, it's not based on – we didn't base it on assault by government employees because there wasn't one. So it was based on – maybe it was based on negligence of the other – based on the actual government employees, not the assault by the inmate. The Theory 2, which it did adopt, is let's read the intentional tort exception against the rest of the act. And it was in the second theory where the court specified that the government's negligence has to be entirely independent and has nothing to do with the tort accuser's employment status. And it goes on to talk about how that was the case there. But what it did say is that these two theories aren't necessarily inconsistent. The second theory that it did adopt is narrower than the first theory. And what Sheridan went on to say in their footnote is we're expressly not addressing negligent supervision, negligent hiring, negligent training claims. So it's talking about something different than that. Let me ask you a hypothetical. What if the perpetrator, instead of being the employees of the daycare, was a friend of one of the families who came in and abused the children? And the supervisor of the daycare knew about it but didn't do anything about it? That's the same claim, isn't it? That's a different claim, Your Honor. No, and the intentional tort exception presumably would not apply in that situation. But how is the claim different? Because we're not talking about supervision or retention of the intentional tort accusers of the teachers. We're talking about a situation like the two Doe cases that opposing counsel referenced and like Sheridan where the government has created a circumstance in which the person who committed the intentional tort, the assailant, could have been anyone, could have been a third party, just happened to be a federal employee. So in the two Doe cases that opposing counsel referenced, the abuse was actually by the third party. But in answer to this hypothetical, the government is liable because the government employee should have stopped the individual from abusing the children who walked in. That's correct, Your Honor. So what's the difference between a non-government employee as a perpetrator and a government employee who's acting outside the scope of his employment as a perpetrator? The difference is the, and I'll call it antecedent negligence, in allowing this person to come in and it's a matter of supervision of the children, you're allowing this third party parent who is not in the role as a teacher, as an employee, to come into the classroom. That's different than just monitoring your own employees in their classroom. This is abuse by the children assigned to you. But they allege in their complaint that there was a supervisor who knew that these things were going on and you're not arguing that it's within the scope of employment for the government employees to abuse children, is it? No. You're not arguing that that's within the scope? That's not the argument. That's not what Georgia law would look at. It would look at whether, because all these cases are intentional tort. What Georgia law is looking at is are they in the furtherance of their duty and the furtherance of a teacher's duty as the supervision of the children. So like in Alvarez. I think under Sheridan, and even if you read the statute, the liability is imposed on the government if you have an employee that does something within the scope of their employment that they have an obligation to do or they have a duty to do. I don't think it's that narrow because in Alvarez, the government employee was running a Ponzi scheme. That certainly wouldn't be in the scope of his employment, but it was connected to what the government hired him to do, which was to provide retirement advice to federal employees. And we would see the same in the Reid case. Shooting or assaulting a coworker is not in the scope of a postal worker's employment, but the claim itself is about the negligence, supervision, and retention of that employee. Well, in Alvarez, the court said that it was based on the misrepresentation exception, right? And that the government's failure to reveal the Ponzi scheme was in itself a misrepresentation. It was an omission. And that's the difference between that and this situation, isn't it? In Alvarez, no, Your Honor. Well, in Zelaya, it was a failure to warn. In Alvarez, it included that, but it also included the failure to vet, investigate, and supervise, which this court said were all covered by the misrepresentation exception. The claims were rooted in the supervisor-to-supervisor relationship. But then to add on to that, we're talking about the failure to warn, which doesn't have a private analog under Georgia law, and also would fall into the misrepresentation exception. So I think we can look at it as you have the assault and battery, and then you have the failure to warn, which the plaintiff conceded the failure to warn allegations don't have an analog, and those aren't actionable. So we're really focused, I think, on the assault and battery claims. Do you recognize that there's a distinction between the fact that the alleged perpetrators were government employees and whether the claim depends on their status as government employees? Because I think that's the distinction we're talking about here. So they may have been, and they in fact were, government employees, but the claim doesn't depend on that fact. I think the claim does depend on that fact, because we're alleging daycare abuse by the children's daycare teachers. We're not alleging that some negligence outside of the employment context, such as in the two Doe cases where the children were allowed to leave the premises, where they were taken off site, where they were abused by non-government workers. In the Seventh Circuit Doe case, they talked about, they gave the hypothetical of children running out of the building and getting hit by a car. But see, I think that's about the fact, whether in fact the children were abused by a government employee, as opposed to whether the claim depends upon it. Right, and what I'm trying to say is the plaintiffs have not alleged any conceivable notion of the idea where these children would have been abused by anyone other than their government, their assigned teachers. So it all falls back into the employment relationship and the negligence supervision. So I guess one concern that I have is that the argument that you're making, that everything sort of hinges on the employee-employer relationship, sounds like what Justice Kennedy was saying in his concurring opinion in Sheridan. It doesn't sound to me like what the majority said in analyzing what I'm calling Theory 2. I took the majority's position regarding Theory 2 to say some version of the following. Because we read the intentional tort exception against the backdrop of the FTCA, and the FTCA applies to government employees acting within the scope of their authority, that either one of those, if you relax either of those two premises, not a government employee or government employee acting outside of the scope of his or her employment, intentional tort exception does not apply. It sort of melts away. So I don't read the majority's analysis of Theory 2 to hinge everything on the existence of the employer-employee relationship. Now, I do think Justice Kennedy said some version of that. But it sounds like you're trying to sort of like take Justice Kennedy's rationale and make it the majority's rationale. Am I misunderstanding something? I don't think that's what I'm saying, Your Honor. When we're looking at scope, we're also looking at the employees through the plaintiff's claim were negligent. The non-tort fees are still the other government employees. No one's alleging that they were out of scope. The intentional tort exception is broad enough. It doesn't apply just to claims for assault and battery. It's any claim arising out of assault and battery. And so what that encompasses is also these employees who no one's disputing were in scope, which is the other government actors. And Sheridan, the second theory is still talking about it has to be entirely the government's negligent. And we're talking about both categories of employees, the intentional tort feeser and the other employees. The government's negligence has to be entirely independent and have nothing to do with the tort feeser's employment status. It footnotes that we're not addressing the negligent supervision and retention claims. And what Justice Kennedy says in his concurrence is if it's negligence in the selections or supervision of the employee, then the intentional tort exception applies. And Justice Kennedy was looking back at the Shearer case. And then in Alvarez, this court did the same thing, saying no matter how the plaintiffs frame their claims, they're all rooted in supervisory relationships at work. They're all based on negligent supervision, retention, and employment context. So I don't think it's a proper reading of Sheridan to say that it allows negligent supervision or retention claims to survive or claims that no matter how the plaintiff frames them, if they're in the kind of sphere of negligent supervision or retention, they're barred by the intentional tort exception. Thank you. If the court has no further questions, the government asks that the court affirm the district court's order. Thank you, Mr. Ross. Mr. Hamilton. Thank you, Your Honor. My friend Mr. Ross here is trying to box our claims into only negligent supervision claims. Looking at our complaint, we clearly pled a separate independent duty of care for the children that the United States government assumed and a breach of that duty. The essence of our claim is that the breach of duty happened whenever they failed to supervise the children and they failed to monitor the children, just like that in Doe v. United States. It doesn't solely arise out of the negligent supervision of the employees. Mr. Ross is right. If it was only that, then our claims would be barred, but that is not the totality of our complaint. Also, in our original complaint, we made reference to negligent breaches of the regulations that were imposed, that they self-imposed upon themselves. Whenever we mention the word staff, that the United States failed to prevent its staff from doing certain things, we're not just alleging the intentional tortfeasors there. There is another tortfeasor of the Director of the United States that had a duty to follow these things as well, and she did not, and she was not the one committing the intentional tort. So, in our original complaint, it could fall outside of that intentional tort exception. We also have a proposed amended complaint that we didn't touch on very much, but one comment earlier was that we have never alleged before that the actions of the intentional assailants were outside the scope of their employment. In our proposed amended complaint, which was denied by Judge Shredler of the Middle District of Georgia, was that we stated getting on our end of January 4th, 2021, and continuing through February 10th of 2021, that the following agency will result in defendant's breach of independent antecedent duty to protect plaintiffs. Zanae Flynn and Antonisha Fritz committed the following egregious acts, which were completely outside the scope of their employment with the defendant, and for their own personal gratification against Minor Does 1, 2, and 3. And, again, that goes back to another persuasive case in the voting case in the Fifth Circuit that showed the court here that second theory also applies for us because their actions did not arise out of the scope of their employment. They accepted it. So, taking away the government itself, those claims would not provide an action against the United States. Can I ask you just maybe for your clarification or at least your view of how Sheridan Theory 2 works? I thought that Sheridan Theory 2 says that you look to the underlying tort and whether the underlying tortfeasors were acting within – either were government employees or weren't government employees or were government employees not acting within the scope of their employment. But I took Mr. Ross to be saying, no, no, no, you're looking at the wrong set of tortfeasors. Who you need to be looking at is this – well, let's call them the supervisors, the poobahs, not the perpetrators, but the poobahs. The question is whether they were acting within the scope of their employment. Can you give me your view about which group of tortfeasors Sheridan Theory 2 is looking at with respect to scope of employment? Well, first, the heads of the daycare or the poobahs, as you say, they have to be acting within the scope of their employment for you to have a federal tort claims act. Yes, so I thought we were looking at the other group, the perpetrators. Yes, Your Honor. We're looking at the perpetrators in that second theory of whether their actions are arising out of the scope of their employment. Okay. That's helpful. Thank you. If there are no other questions for me, I will end my time. Thank you, Your Honor. Thank you. Thank you.